J-A10016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAMAL JAINLETT | : | |
| | : | |
| Appellant | : | No. 689 EDA 2022 |

Appeal from the Judgment of Sentence Entered February 15, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0003413-2020

BEFORE:  PANELLA, P.J., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY KING, J.:                    **FILED JULY 28, 2023**

Appellant, Jamal Jainlett, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for kidnapping, terroristic threats, simple assault, and recklessly endangering another person ("REAP").[1]  We affirm.

The trial court opinion set forth the relevant facts and procedural history of this case as follows:

> On August 24, 2020, [Appellant] and [Complainant] were drinking and began to argue.  At the relevant time, [Appellant] and [Complainant] were in a relationship and living together with [Complainant's] ten-year-old son, although [Complainant] testified that she wanted to leave their "abusive, toxic relationship."  During the argument, [Appellant] demanded that [Complainant] go to the car, and

_____

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2901(a)(3), 2706(a)(1), 2701(a), and 2705, respectively.

as she walked over, she felt [Appellant] place something hard on her back. She believed the object was a gun, so she complied when [Appellant] told her to get into the backseat of the car. At that time, [Complainant] could not exit the vehicle because the child safety lock was on the back doors.

[Appellant], who at the time was drunker than [Complainant], got into the driver's side of the vehicle, struck her in the face, and yelled at her. [Appellant] drove off at a high rate of speed, and when [Complainant] asked where he was taking her, he replied that he was taking her to her grave site.[2] However, after approximately two minutes [Appellant] collided with a fire hydrant, which allowed [Complainant] to reach in the front to unlock the vehicle and flee to safety.

(Trial Court Opinion, filed 8/11/22, at 2) (internal record citations omitted). The Commonwealth subsequently charged Appellant with offenses stemming from this incident.

On June 29, 2021, the Commonwealth filed a motion to admit other acts evidence, pursuant to Pa.R.E. 404(b). First, the Commonwealth requested the admission of evidence regarding Appellant's November 5, 2019 arrest for violating a Protection From Abuse ("PFA") order that Complainant had obtained. The Commonwealth also requested the admission of evidence regarding Appellant's December 10, 2019 violation of the same PFA order.[3]

---

[2] Complainant also testified that Appellant repeatedly called her a "rat" during the August 24, 2020 incident, and he had called her a rat on other occasions. (N.T. Trial, 8/18/21, at 25-26).

[3] During the December 2019 incident, Appellant went to Complainant's house while intoxicated. Appellant called Complainant a "rat," beat her, dragged her

*(Footnote Continued Next Page)*

Finally, the Commonwealth requested the admission of Complainant's August 24, 2020 statement to police, wherein she claimed that Appellant "seemed very angry because she left for two weeks because of abuse by him." (Rule 404(b) Motion, filed 6/29/21, at 4) (internal quotation marks omitted).

The court conducted a hearing on the Rule 404(b) motion on June 30, 2021. At the conclusion of the hearing, the court granted the motion in part. Specifically, the court granted the motion as to evidence of the December 2019 incident and Complainant's August 2020 statement. The court denied the motion as to evidence of Appellant's November 2019 arrest. Appellant proceeded to a bench trial, and the court convicted him of kidnapping, terroristic threats, simple assault, and REAP.[4] On February 15, 2022, the court sentenced Appellant to an aggregate term of eight (8) to sixteen (16) years' incarceration, followed by four (4) years of probation. Appellant timely filed a post-sentence motion on February 24, 2022, which the court denied on February 28, 2022.

Appellant timely filed a notice of appeal on March 7, 2022. On March 8, 2022, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Following the grant of an

---

by her hair, and threatened to wrap a cord around her neck. (*See* Rule 404(b) Motion, filed 6/29/21, at 3-4).

[4] After the ruling on the Commonwealth's Rule 404(b) motion, the case was assigned to a different jurist for trial.

extension, Appellant filed a Rule 1925(b) statement on April 20, 2022.

Appellant now raises the following issue for our review:

Did not the [trial] court err and abuse its discretion when it allowed the Commonwealth to present evidence of other acts, where the evidence was primarily used to show a propensity for violence towards the complainant and where the prejudicial effect of such evidence far outweighed any probative value?

(Appellant's Brief at 3).

On appeal, Appellant argues that the court erred by allowing the Commonwealth to introduce evidence of the December 2019 incident involving Complainant ("the prior bad acts evidence"). Appellant emphasizes that what occurred in 2019 "was a single incident," and Appellant "was never convicted of a crime for that incident." (*Id.* at 15). Appellant contends that the Commonwealth improperly relied upon the prior bad acts evidence "to bolster witness credibility and argue that [Appellant] acted in conformity therewith." (*Id.* at 14-15). Appellant insists that the prior bad acts evidence did not satisfy any of the admissibility requirements set forth in Rule 404(b), and the evidence "was far more prejudicial than probative[.]" (*Id.* at 16). Further, Appellant claims that the error in admitting this evidence cannot be considered harmless. Appellant concludes the court abused its discretion with this evidentiary ruling, and he is entitled to a new trial on this basis. We disagree.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

Questions concerning the admissibility of evidence are

- 4 -

within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 244 A.3d 1222 (2021) (quoting *Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa.Super. 2014)).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 787, 128 A.3d 220 (2015).

Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa.Super. 2019), *appeal denied*, 656 Pa. 9, 219 A.3d 597 (2019) (internal quotation marks omitted).

"Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, evidence of another crime, wrong, or act "may be admissible for another

purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). "In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.*

"Evidence of prior bad acts may [also] be admitted to establish the existence of a common scheme, [establish] an individual's motive, intent, or plan, or [identify] a criminal defendant as the perpetrator of the offense charged." **Commonwealth v. Ivy**, 146 A.3d 241, 253 (Pa.Super. 2016) (internal quotation marks omitted). "However, bad act evidence is only admissible … '1) if a logical connection exists between that bad act(s) and the crime charged, linking them for a purpose the defendant intended to accomplish, or 2) if the bad acts manifest a signature crime.'" **Commonwealth v. Herring**, 271 A.3d 911, 919 (Pa.Super. 2022), *appeal denied*, ___ Pa. ___, 288 A.3d 865 (2022) (quoting **Commonwealth v. Yale**, ___ Pa. ___, ___, 249 A.3d 1001, 1015 (2021)).

Instantly, the Commonwealth sought permission to introduce evidence of three separate prior bad acts. The court granted the motion in part, permitting the introduction of evidence regarding the December 2019 incident and Complainant's August 2020 statement to police.[5] In granting the Commonwealth's request, the court explained:

---

[5] Appellant does not challenge admission of Complainant's August 2020 statement to police on appeal.

> After careful consideration, I'm going to allow the one incident from December [2019] where [Appellant] used similar language that she's a rat, those following things. That incident will be allowed.
>
> The other one, I think, goes further than necessary, in balancing everything of what the Commonwealth needs. But giving the fact that the allegations are he's intoxicated, I think that it's important to be able to show his intent and I think that the Commonwealth, showing the fact that it was close in time, location, that the language was similar, have that kind of identification mark, so to speak, before something happened, is necessary to prove the intent and to avoid potential issues of intoxication coming up as a valid defense to a judge or jury.

(N.T. Pretrial Hearing, 6/30/21, at 12-13).

Here, the prior bad acts evidence was logically connected to the current offenses. *See Herring, supra*. During both incidents, Appellant struck Complainant and called her a "rat" when faced with the deterioration of their relationship. Moreover, we emphasize that the court sat as the trier of fact. Under such circumstances, we presume that the court disregarded any inadmissible statements and considered only relevant, competent evidence. *See Commonwealth v. Zimmerman*, 571 A.2d 1062 (Pa.Super. 1990), *cert. denied*, 503 U.S. 945, 112 S.Ct. 1498, 117 L.Ed.2d 638 (1992) (reiterating presumption that judge, sitting as fact finder, is not improperly influenced by evidence which would otherwise be considered prejudicial). Therefore, the court did not abuse its discretion by admitting the prior bad acts evidence. *See LeClair, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/28/2023